FILED
2015 Mar-20  PM 01:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBRA BOND ESTES,** | } | |
| | } | |
| **Debtor-Defendant/Appellant,** | } | |
| | } | |
| **v.** | } | **CASE NO. 2:14-cv-994-SLB** |
| | } | |
| **BETTYE ANN ANGLIN,** | } | |
| | } | |
| **Creditor-Plaintiff/Appellee.** | } | |

## <u>MEMORANDUM OPINION</u>

This case is before the court on appeal from a judgment of the United States Bankruptcy Court for the Northern District of Alabama denying appellant Debra Bond Estes a discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(B). (*See* B.A.P. Docs. 174 at 46 and 175 at 2.)[1] Upon consideration of the record, the submissions of the parties, and the relevant law, the court finds that the decision of the bankruptcy court is due to be affirmed.

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in this court's record on appeal. Reference to a bankruptcy court document number, ("B.C. Doc. ___"), refers to the number assigned to each document as it was filed in the bankruptcy court's record of the underlying bankruptcy action filed by Debra Bond Estes, Case No. 07-4648-BGC-7. Reference to a bankruptcy court document number, ("B.A.P. Doc. ___"), refers to the number assigned to each document as it was filed in the bankruptcy court's record of adversary proceeding No. 07-235-BGC-7, which was a separate adversary proceeding filed by Bettye Ann Anglin. The bankruptcy court's final Memorandum Opinion from both bankruptcy action No. 07-4648-BGC-7, and adversary proceeding No. 07-235-BGC-7, entered contemporaneously with the Judgment appealed from, is reported as *In re Debra Bond Estes*, 415 B.R. 568 (Bankr. N.D. Ala. 2009). However, this court will refer to the bankruptcy court's final Memorandum Opinion using the number assigned to the document in Case No. 07-235-BGC-7, which is B.A.P. Doc. 174.

## I.  PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Appellant Debra Bond Estes was the debtor-defendant in the underlying adversary proceeding, and appellee Bettye Ann Anglin was the creditor-plaintiff. As noted in its previous Memorandum Opinion, (Doc. 10), appellant and appellee have an extensive litigation history, and thus the court will review only the relevant procedural history, which, as set forth in its previous Memorandum Opinion, is as follows:

Appellant has filed chapter 7 bankruptcy on at least three occasions,[2] two of which are relevant here. (*See* [B.A.P. Doc. 174] at 4-9.) Appellant and her husband filed a joint bankruptcy petition in 2002, and appellee commenced an adversary proceeding at that time, seeking to have certain debts owing to appellee ruled nondischargeable. (*Id.* at 9.) The Bankruptcy Court denied appellant a discharge in that case pursuant to 11 U.S.C. § 727(a)(4)(A) because appellant failed to list a diamond necklace as an asset on her bankruptcy schedules. (*Id.* at 9, 12.)

Appellant filed the underlying bankruptcy petition on October 15, 2007, and appellee filed the underlying adversary case against appellant on November 30, 2007. (*Id.* at 9.) In the underlying adversary case, appellee argued in her initial complaint that a judgment against appellant and in appellee's favor from 2002 was nondischargeable under 11 U.S.C. § 523(a)(10)[3] because the judgment resulted from a debt that existed before

---

[2] It is unclear whether a joint bankruptcy petition filed in 1986 by James C. Estes and Debbie Estes was filed by Debra Bond Estes, the appellant in this case. (*See* B.A.P. Doc. 174 at 5.)

[3] Section 523(a)(10) provides:

A discharge under section 727, 1141, 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – that was or could have been listed or scheduled by the debtor in a prior case concerning the debtor under this title or under the Bankruptcy Act in which the debtor . . . was denied a discharge under section 727(a)(2), (3), (4), (5), (6), or (7) of this title . . . .

appellant filed the 2002 bankruptcy case, in which she was denied a discharge. (*See id.* at 13.) The Bankruptcy Court disagreed and granted appellant's motion for summary judgment on that issue. (*Id.* at 19.) However, the Bankruptcy Court permitted appellee to amend her complaint to include a claim under 11 U.S.C. § 727(a)(2)(B).[4] (*Id.* at 24.) [The Order granting appellee's Motion to Amend Complaint was entered March 5, 2012. (B.A.P. Doc. 105.)] In considering appellee's claim, the Bankruptcy Court ruled that appellant was barred from receiving a discharge pursuant to § 727(a)(2)(B) because appellant did not list an insurance claim for a lost diamond necklace on her bankruptcy schedules. (*Id.* at 45.)

A Notice of Appeal was filed in this court on May 30, 2014. (Doc. 1.) Thereafter, appellee filed a Motion to Dismiss Appeal, (Doc. 3), citing Federal Rule of Civil Procedure 11 as grounds. After the fourteen day deadline for filing a brief under Federal Rule of Bankruptcy Procedure, Rule 8009[5] had passed, appellant filed a Motion for Extension of Time, (Doc. 4), citing counsel's failure to renew his admission to the Federal District Court as the reason for the delay. Subsequently, appellant filed a response to appellee's Motion to Dismiss and a brief supporting the appeal. Appellee then filed Brief of Appellant and Renewed Motion to Dismiss Appeal, (Doc. 7), in which she moves to strike Brief in Support of Debtors Appeal, (Doc. 6), for appellant's failure to comply with Federal Rule of Bankruptcy Procedure, Rule 8010, and

---

[4] Section 727(a)(2)(B) provides:

> The court shall grant a debtor a discharge, unless . . . the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the estate, after the date of the filing of the petition.

[5] Amendments to the Federal Rules of Bankruptcy Procedure took effect on December 1, 2014. Because the procedural history in this case occurred before the amendments took effect, the court refers to the former version of the Rules in this opinion. *See Current Rules of Practice & Procedure*, UNITED STATES COURTS, http://www.uscourts.gov/RulesAndPolicies/rules/current-rules.aspx (last visited Jan. 6, 2015).

renews her motion to dismiss the appeal. Appellant then filed Brief of the Appellant, (Doc. 8).

(Doc. 10 at 2-4.) On January 13, 2015, this court entered an Order denying appellee's Motions to Dismiss, granting appellee's motion to strike Brief in Support of Debtors Appeal, and granting appellant's Motion for Extension of Time. (Doc. 11.)

The facts of this case are largely undisputed. Appellant alleges that she lost a diamond necklace valued at $15,000 in March 2007. (Doc. 8 at 8; *see also* B.A.P. Doc. 95 at 6.) Appellant's husband, James Estes, stated in a deposition taken in December 2007 that the necklace was lost.[6] (Doc. 8 at 8; B.A.P. Doc. 174 at 41 n.45.) Despite maintaining an insurance policy with Cincinnati Insurance Company covering the necklace, appellant did not file an insurance claim when she lost the necklace or report the missing necklace to the

_____

[6] Appellant contends that Mr. Estes testified in a March 2007 deposition in a different case that appellant lost her necklace, and therefore, "[t]he Anglins knew well before the Adversary case was filed in November of 2007 that a necklace was missing and no insurance claim had been filed." (Doc. 8 at 8.) Appellant relies in part on the Trustee's statement that a deposition took place around March 30, 2007, in which Mr. Estes revealed that his wife's necklace was missing. (*See* B.A.P. Doc. 95 at 6.) Because the Trustee stated that he filed a claim with appellant's insurance company for the value of the missing necklace as a result of Mr. Estes's statement during the deposition, the bankruptcy court assumed that the Trustee incorrectly stated the month of the deposition, intending to state that he relied on the December 2007 deposition, which was the first time in the adversary proceeding that Mr. Estes discussed appellant's lost necklace. (*See* B.A.P. Doc. 174 at 41 n.45.) Appellant has not provided a citation directing the court to the March 2007 deposition, a document showing that the March 2007 deposition took place, or the case number for the case in which the deposition took place. Hereafter, the court will consider only the December 2007 deposition because appellee is charged only with knowledge of appellant's property gained from the bankruptcy case and adversary proceeding at issue in this appeal. Appellee is not required to have knowledge of statements made in all previous legal proceedings to which appellant has been a party.

4

police. (B.A.P. Doc. 174 at 27.) Appellant testified that she let her husband decide whether to file a claim, (*see id.*), and her husband testified that he did not file a claim for the missing necklace because he believed the insurance company would cancel his and appellant's homeowners' insurance if he did, (*id.* at 25, 37). The insurance policy covering the necklace provided that the insured must "[g]ive immediate notice to 'us' or 'our' agent" in the event of a "physical loss" to covered property. (*See* Copy of Cincinnati Insurance Company Executive Form at 21.)

At the initiation of her bankruptcy case, appellant completed the required bankruptcy forms but failed to list the insurance claim for her necklace as an asset in Schedule B, the schedule for personal property. (*See* B.C. Doc. 3.) Appellant also failed to list the necklace in the designated area in the Statement of Financial Affairs for "losses from fire, theft, other casualty or gambling within one year immediately preceding the commencement of this case," instead, marking the box for "none." (B.C. Doc. 1 at 23.) The section for the disclosure of losses requires a "description and value of property," as well as a "description of circumstances and, if loss was covered in whole or in part by insurance," the particulars of the insurance policy. (*Id.*) As appellant did not list the loss of her necklace, she also did not provide the necessary information regarding her insurance policy.

When the Trustee discovered the unfiled insurance claim for appellant's lost necklace, he filed an insurance claim for $15,000 with Cincinnati Insurance Company. (B.A.P. Doc. 95 at 6; B.A.P. Doc. 174 at 28.) The insurance adjuster contacted appellant and

her husband to take a statement about the lost necklace, and the Esteses told the adjuster not to process the insurance claim and that the claim should be withdrawn. (*Id.*) As a result of the Esteses' statement, the insurance company denied the Trustee's claim and notified the Trustee of the denial. (B.A.P. Doc. 95 at 6.) In subsequent correspondence with the Trustee, Cincinnati Insurance Company stated that additional reasons for denying the claim included "that the Trustee did not have standing to bring the claim if the Debtor withdrew it and that there was no proof that the necklace had, in fact, been lost." (*Id.*)

The Trustee and his attorney wrote Cincinnati Insurance Company a letter explaining that the Esteses were in bankruptcy and that the unfiled insurance claim was property of the estate pursuant to 11 U.S.C. § 541. (B.A.P. Doc. 174 at 29.) After negotiations, the insurance company offered the Trustee $7,500, which is half of the necklace's appraised value. (*Id.*) After the time for filing objections to this compromise had passed and no objections were filed, the bankruptcy court approved the compromise on April 6, 2010. (B.A.P. Doc. 95 at 6.) Cincinnati Insurance Company subsequently cancelled appellant's insurance policy. (B.A.P. Doc. 174 at 39.)

## II.  STANDARD OF REVIEW

This court has appellate jurisdiction over the bankruptcy court decision pursuant to 28 U.S.C. § 158(a).  "In reviewing bankruptcy court judgments, a district court functions as an appellate court. It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous."  *In re JLJ*

*Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993) (internal citations omitted). "The bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, [the court is] left with the definite and firm conviction that a mistake has been made." *In re Int'l Pharm. & Disc. II, Inc.*, 443 F.3d 767, 770 (11th Cir. 2005) (citing *In re Cox*, 338 F.3d 1238, 1241 (11th Cir. 2003)). Because bankruptcy courts have discretion in allowing or denying amendments to an adversary complaint, a district court reviews a bankruptcy court's decision for abuse of discretion. *See Carnegia v. Georgia Higher Educ. Assistance Corp.*, 691 F.2d 482, 483 (11th Cir. 1982) (citing *Adams v. Evans*, 642 F.2d 173 (5th Cir. 1981) (holding that the abuse of discretion standard of review applies to "a bankruptcy court's decision on whether to allow claims")); *In re Holywell Corp.*, 177 B.R. 991, 997 (Bankr. S.D. Fla 1995) (citing *Motorcity of Jacksonville, Ltd. v. Southeast Bank*, 39 F.3d 292, 297 (11th Cir. 1994)).

## III. <u>DISCUSSION</u>

Appellant assigns three errors to the bankruptcy court's decision. Appellant first contends that the bankruptcy court erred by allowing appellee to amend her adversary complaint four years after the original filing. (Doc. 8 at 5.) Appellant next argues that the bankruptcy court erred in finding that appellant concealed an asset of the estate when she failed to list her unfiled insurance claim for the lost necklace, and finally, that in reaching this finding, the bankruptcy court erroneously compared this case to *Helbling v. Holmes* (*In re Holmes*), Adversary No. 08-1159, 2008 WL 6192253 (N.D. Ohio Dec. 3, 2008). (*Id.*)

## A. Amendment to Appellee's Adversary Complaint

Federal Rule of Civil Procedure 15 provides that, other than when a party may amend a pleading once as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Additionally, Rule 15 provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading[.]" Fed. R. Civ. P. (c)(1)(B). "Rule 15 of the Federal Rules of Civil Procedure, made applicable to [adversary proceedings in bankruptcy] by Federal Rule of Bankruptcy Procedure 7015, provides a liberal and permissive standard for amending a complaint." *In re Kidd*, Adversary No. 09-6507, 2012 WL 909691, at *2 (N.D. Ga. Feb. 8, 2012). The bankruptcy court exercises discretion in deciding whether to grant or deny a motion to amend. *See In re Kyu Sup Mun*, 458 B.R. 628, 630 (Bankr. N.D. Ga. 2011) (citing *Foman v. Davis*, 371 U.S. 178 (1962)).

Appellant contends that the bankruptcy court should not have granted appellee leave to amend four years after appellee filed her original complaint. (Doc. 8 at 8.) The bankruptcy court found that, even considering the passage of time, allowing the amendment was within the sound discretion of the court, explaining:

> The plaintiff filed the pending complaint on November 30, 2007. But . . . the
> issue of the defendant's necklace was not resolved until at least two years

> after the pending case and adversary were filed. It may be that the plaintiffs[7]
> should not have waited another two years to bring the action, but the Court
> cannot find that the complaint amendment is so untimely that it should be
> denied now. It is, of course, like all section 727(a)(2)(B) matters, by definition
> something that must have occurred after a case is filed.

(B.A.P. Doc. 174 at 21 (footnote omitted).) Given that the Trustee did not reach a compromise with Cincinnati Insurance Company until 2010 and that appellant has exhibited a pattern of omitting to disclose assets, by not listing the diamond necklace in her 2002 bankruptcy schedules and by not listing the insurance claim for the loss of the same necklace in her 2007 bankruptcy schedules,[8] the court finds that the bankruptcy court did not abuse its discretion in allowing appellee to amend her complaint.

Appellant also argues that the amendment should not have been allowed because appellee knew that appellant's necklace was lost based on a March 2007 deposition that took place in another case. (Doc. 8 at 8.) As discussed above, however, this court will not consider the March 2007 deposition and assumes that appellee gained knowledge of the missing necklace for the first time during the December 2007 deposition of appellant's husband. As such, appellee could not have originally filed the amended claim because the December 2007

---

[7] The bankruptcy court refers to "plaintiffs" because Forrest Anglin, Bettye Ann Anglin's husband, was also a party to the adversary proceeding. He is not a party to this appeal.

[8] This issue is discussed more fully below.

deposition took place after appellee filed the adversary proceeding. Again, the court finds no abuse of discretion in the bankruptcy court's decision to allow an amendment.

Furthermore, the bankruptcy court properly found that the amendment related back to the date appellee filed her original complaint. In the original complaint, appellee was seeking the nondischargability of debt that appellant owed her based on the bankruptcy court's previous denial of appellant's discharge that resulted, in part, from her failure to list the diamond necklace as an asset. Appellant's current failure to list the insurance claim arising from the loss of that same necklace arises from the conduct "set forth or attempted to be set forth in the original pleading." (*See* B.A.P. Doc. 174 at 24.)

### B. Section 727(a)(2)(B) Claim and the Court's *Holmes* Analysis

Appellee contested appellant's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(2)(B), which provides that the court shall grant the debtor a discharge unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> . . .
>
> (B) property of the estate, after the date of the filing of the petition[.]

11. U.S.C. § 727(a)(2)(B). To prevail under this statute, the moving party "must prove the following elements:

(1) there was a concealment;

(2) after the filing date of the petition;

10

(3) of property of the estate;

(4) by the debtor with the intent at the time of the concealment to hinder, delay or defraud his creditors."

*In re Johnson*, 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003). "Courts have interpreted concealment under § 727(a)(2)(B) to mean 'withholding knowledge of an asset by the failure or refusal to divulge owed information.' . . . Some courts have found than an omission from the bankruptcy schedules will meet this requirement." *Holmes*, 2008 WL 6192253, at *4 (quoting *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 156 (Bankr. N.D. Ohio 1998)). The element of intent requires proof that the debtor had actual intent to defraud; constructive fraud will not suffice. *In re Johnson*, 301 B.R. at 597; *Holmes*, 2008 WL 6192253, at *4. "[F]raudulent intent can be found where the defendant demonstrates reckless disregard or indifference for the truth. The Court may deduce such behavior from the facts and circumstances of the case. A pattern of omissions on the part of the debtor is often sufficient to find fraudulent intent, but an innocent mistake or error will not suffice." *Holmes*, 2008 WL 6192253, at *4 (internal citations and quotations omitted).

In *Holmes*, the debtor owned a fur coat when she filed bankruptcy but did not list the coat as an asset on her bankruptcy schedules. *Id.* at *1. She subsequently lost the coat and filed an insurance claim but failed to amend her bankruptcy schedules to list the claim as an asset. *Id.* The bankruptcy court initially granted the debtor a discharge, but when the trustee

sought to revoke the discharge, the bankruptcy court granted the trustee's motion, finding that the debtor had violated 11. U.S.C. § 727(a)(2)(B). *Id.* at *6.

In the instant case, the bankruptcy court found that appellant's necklace was insured, that appellant had a potential insurance claim for the necklace, and that appellant failed to list the insurance claim as an asset in her bankruptcy case. (B.A.P. Doc. 174 at 39.) The bankruptcy court also found that the missing necklace at issue is the same necklace appellant failed to list in her 2002 bankruptcy schedules, the omission of which led, in part, to the bankruptcy court denying appellant's discharge in 2002. (*Id.* at 39, 44.) In assessing appellee's § 727(a)(2)(B) claim, the bankruptcy court first compared appellant's case with *Holmes*, noting that, even though the *Holmes* debtor notified her insurance company of the fur's loss, she did not notify the trustee, just as appellant failed to notify the Trustee of her potential insurance claim for the lost necklace. (*Id.* at 40.) The bankruptcy court then found that the first and third elements of the four-part test under § 727(a)(2)(B) were both clearly met and uncontested. (*Id.*) The bankruptcy court went on to find that appellant concealed the insurance claim by failing to list it as an asset of the estate and that appellant did so with actual intent to defraud. (*Id.* at 40, 43.)

Appellant argues that she did not conceal an asset under § 727(a)(2)(B) because she "chose not to make [an insurance] claim," and she further contends she is unlike the debtor in *Holmes* who had possession of a fur coat when she filed for bankruptcy because appellant lost her necklace months before she filed for bankruptcy. (Doc. 8 at 9.) Appellant's

contentions are unavailing. First, appellant's attempted distinction between this case and *Holmes* does not account for the important similarity between them: appellant and the *Holmes* debtor failed to disclose a valuable asset after the bankruptcy case was filed. Appellant's choice not to file an insurance claim for the necklace does not affect the insurance claim's status as an asset of the bankruptcy estate. An unfiled but potential insurance claim is comparable to a debtor's potential cause of action that has not been filed prior to the initiation of a bankruptcy proceeding. "Causes of action need not be formally filed prior to the commencement of a bankruptcy case to become property of the bankruptcy estate." *Lawrence v. Jackson Mack Sales, Inc.*, 837 F. Supp. 771, 779 (S.D. Miss. 1992) (citing *Miller v. Shallowford Cmty. Hosp., Inc.*, 767 F.2d 1556, 1561 (11th Cir. 1985) (holding that a prepetition cause of action was property of the estate, even though the debtor had not formally filed the action)).

> It goes without saying that the Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*. . . . The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed. *Any claim with potential must be disclosed*, even if it is contingent, dependent, or conditional.

*In re Coastal Plains, Inc.*, 179 F.3d 197, 207-08 (5th Cir. 1999) (internal citations and quotations omitted). "The reason behind this policy of good faith disclosure is that the veracity of the bankrupt's statements is essential to the successful administration of the

13

bankruptcy code." *In re Gonzalez*, 92 B.R. 960, 962 (Bankr. S.D. Fla. 1988) (citing *In re Watkins*, 84 B.R. 246, 250 (Bankr. S.D. Fla. 1988)).

Although appellant's claim was unfiled when appellant commenced her bankruptcy case, a claim for the necklace existed because the necklace was covered by an insurance policy, so the claim became property of the estate when appellant filed bankruptcy. Furthermore, the successful compromise between the Trustee and Cincinnati Insurance Company for half the value of the necklace, which they reached after the Trustee explained that the insurance claim was property of the estate and no longer appellant's property, belies appellant's argument that there was no valid insurance claim to conceal. Appellant attempts to excuse her conduct by asserting that she and her husband chose not to file an insurance claim for the necklace because they feared the insurance company would cancel their homeowners' insurance. While that may have been a valid reason not to file the insurance claim before October 15, 2007, appellant's concern for her and her husband's homeowners' insurance became secondary to her duty to provide a complete and honest disclosure of all assets once she filed for bankruptcy.

The court finds that the insurance claim was property of the estate that appellant concealed by not listing it as an asset on her bankruptcy schedules when she filed her bankruptcy case. Additionally, it is not disputed that appellant concealed this asset after she filed bankruptcy because she did not list the insurance claim as an asset on her bankruptcy schedules during the pendency of her bankruptcy case. The remaining issue, therefore, is

14

whether the bankruptcy court correctly found that appellant possessed the requisite intent to defraud a trustee or creditor.

First, not only did appellant fail to list her insurance claim as an asset, but she also failed to list the loss of her necklace and the necessary insurance information in the designated portion of her bankruptcy forms. Appellant's actions in hiding both the insurance claim and the loss of the missing necklace clearly show intent to defraud appellee and the Trustee. Additionally, appellant attempted to have Cincinnati Insurance Company withdraw the Trustee's insurance claim when the Trustee was performing his duty to "collect and reduce to money the property of the estate," *In re Bryan*, No. 12-31486-WRS, 2013 WL 4716194, at *1 (Bankr. M.D. Ala. Sept. 3, 2013), even though the insurance claim was property of the estate and no longer appellant's property. These actions appear particularly indicative of fraudulent intent given appellant's previous bankruptcy filing, in which she failed to list the same diamond necklace as an asset in her bankruptcy schedules. The court finds that appellant unquestionably had actual intent to defraud.

In reviewing the bankruptcy court's factual findings for clear error, the court is not "left with the definite and firm conviction that a mistake has been made," and in reviewing the record de novo, the court finds that all elements for fraudulent concealment have been met and, therefore, the bankruptcy court properly denied appellant's discharge pursuant to 11. U.S.C. § 727(a)(2)(B).

IV.  **CONCLUSION**

For the foregoing reasons, the judgment of the bankruptcy court is due to be affirmed.

An Order in conformity with this Memorandum Opinion will be entered contemporaneously

herewith.

**DONE** this 20th day of March, 2015.


*Sharon Lovelace Blackburn*
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE

16